**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Timothy S. Gagnon, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | JURY DEMANDED |
| United Technisource, Inc., AIS Tech | § | |
| Services, Inc., Wing Aviation, LLC | § | |
| Defendants. | § | |

### PLAINTIFF, TIMOTHY S. GAGNON'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff, Timothy S. Gagnon, complaining of and about Defendants United Technisource, Inc., AIS Tech Services, Inc., and Wing Aviation, LLC and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.      Plaintiff, Timothy S. Gagnon, an individual, is a Citizen of the United States of American and currently resides in Tucson, Arizona.

2.      Defendant, United Technisource, Inc., is a corporation that is incorporated under the laws of the State of Texas.  Defendant has its principal place of business in the State of Texas.  Defendant may be served with process by serving its registered agent, Joe Robinson, at 2050 Greenwood, Suite 400, Southlake, Texas 76092, USA.  Plaintiff sues United Technisource, Inc., its parent corporations, sister corporations, affiliates, subsidiaries, divisions, agents, predecessors, successors and assigns.

3.      Defendant, AIS Tech Services, Inc., is a corporation that is incorporated under the laws of the State of Texas.  Defendant has its principal place of business in the State of Texas.  Defendant may be served with process by serving its registered agent, Joe Robinson, at 2100 Greenbriar, Southlake, Texas 76092 USA.  Plaintiff sues AIS Tech Services, Inc., its parent corporations, sister corporations, affiliates, subsidiaries, divisions, agents, predecessors, successors and assigns.

4.      Defendant, Wing Aviation, LLC, hereinafter "Wing Aviation," is a corporation that is currently incorporated under the laws of the State of Delaware.  Defendant has its principal place of business in the State of Texas.  Defendant may be served with process by serving its registered agent, CT Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002, USA.

## JURISDICTION

5.      The court has jurisdiction over the lawsuit under 28 U.S.C. §1331 because the action presents a federal question arising under the laws of the United States.

## NATURE OF THE ACTION

6.      This action arises under the FAMILY AND MEDICAL LEAVE ACT (FMLA), 29 U.S.C. §2601 *et seq*. which requires an employer to allow an employee to take 12 weeks of unpaid leave for a serious health condition.

7. This action arises under the AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. §12102 *et. seq.* which makes it unlawful for an employer to discriminate against an employee on the basis of disability.

8. This is also an action under the FAIR LABOR STANDARDS ACT of 1938, as Amended, 29 U.S.C. 201 *et. seq.* (FLSA) which provides for the establishment of fair labor standards in employment in and affecting interstate commerce, and for other purposes.

## VENUE

9. Venue is proper in this district under 28 U.S.C. §1391(b)(2) and 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practices were committed in this district in Conroe, Texas.

## CONDITIONS PRECEDENT
## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

10. All conditions precedent have been performed or have occurred. Plaintiff timely filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90 days of receiving a notice of the right to sue from the EEOC. A copy of the notices of the right to sue are attached as Exhibits A-C.

## SINGLE INTEGRATED ENTERPRISE AND JOINT EMPLOYER

11. United Technisource, Inc. and AIS Tech Services, Inc. have at all relevant times acted as a single integrated enterprise. United Technisource, Inc. and AIS Tech Services, Inc.

are collectively referred to herein as "Tech."  Wing Aviation and Tech at all relevant times acted in the capacity of Plaintiff's joint employers.

## FACTS

12.    At all relevant times,  Plaintiff was an employee under the meaning of the FAMILY  AND MEDICAL LEAVE ACT (FMLA), 29 U.S.C. §2611;  the AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. §12111; and, under the FAIR LABOR STANDARDS ACT of 1938, as Amended, 29 U.S.C. 201 §3(e).

13.    Plaintiff signed an employment contract with United Technisource, Inc. about February 21, 2004.

14.    United Technisource, Inc. agreed to pay Plaintiff at the straight rate of $5.50 per hour and at the rate of $20.00 per hour for hours worked over 40 each week at the Wing Aviation facility.  United Technisource, Inc. also agreed to pay Plaintiff $12.50 per hour for every hour worked up to $500.00 in what was called "per diem allowance."  Essentially, Plaintiff was paid at the regular rate of $18.00 per hour and the overtime rate of $20.00 per hour.

15.    Based on information and belief, Wing Aviation paid the aircraft painters who were on its direct payroll around $18.00-$20.00 per hour and $27.00-30.00 for overtime.

16.    Plaintiff was hired to paint air craft for Wing Aviation and worked along side other Wing employees who were on the Wing Aviation payroll.

17.    Plaintiff worked for Wing Aviation in Conroe, Texas and lived in Willis, a small town a few miles from Conroe.

18.    Almost every week, Plaintiff was required to work more than 40 hours and often he worked 60 hours or more for Wing Aviation.

19.    About June 9, 2005, it was announced to Plaintiff that United Technisource, Inc. was acquired by AIS Tech Services, Inc. and new W-4's needed to be completed.

20.    About June 20, 2005, after working for Wing Aviation for over a year and four months, Plaintiff signed a new agreement with AIS Tech Services, Inc., which carried the same terms and conditions for his employment relationship with Wing Aviation.

21.    As before, Wing Adaption continued to exercise significant control over Plaintiffs's work, and Wing Aviation employees supervised Plaintiff's day to day activities, set his hours, and determined his income capabilities.

22.    Wing Aviation supplied Plaintiff with equipment and chemicals such as pressure fed guns, buffers, pressure pots, sanders, paint and solvents, lifts, ladders, and  sand paper.

23.    About July 27, 2005, Wing Aviation authorized a pay increase for Plaintiff and from then on he was paid at the straight rate of $5.50 per hour and at the rate of $21.00 per hour for hours worked over 40 each week and $13.50 per hour per diem for every hour worked up to $540.00.  Essentially, Plaintiff was paid at the regular rate of $19.00 per hour and the overtime rate of $21.00 per hour.

24.    Based on information and belief, Wing Aviation paid the aircraft painters who were on its direct payroll around $19.00-$21.00 per hour and $28.50-31.50 for overtime.

25.    In July of 2005, Plaintiff started asking the Wing Aviation supervisors to be put "on their clock," so he could receive benefits and regular and overtime pay commensurate with industry standards.

26.    In July of 2005, on at least one occasion, Plaintiff was sent home from work by his Wing Aviation supervisor because he was "stressed."  Wing Aviation consistently required him to work 6 or 7 days a week and in excess of 50-60 hours per week.

27.    In about October of 2005, Plaintiff sought medical treatment for his job related stress and was treated for depression and stress.

28.    Plaintiff notified his Wing Aviation supervisors about his medical condition and asked to work regular hours and not so much overtime because of his mental health problems.

29.    Wing Aviation Supervisor, Steve Bowles refused to modify Plaintiffs's work schedule stating that Wing Aviation "needed him there."

30.    Because Wing Aviation required him to continue to work 6 or 7 days a week and often in excess of 60 hours a week, Plaintiff found it necessary to call in sick and miss a few days of work because of his work related depression.

31.    On January 16, 2006, Plaintiff attempted suicide and was hospitalized for three days.

32.    On January 19, 2006 Plaintiff discussed his mental health condition with Wing Aviation Supervisor, Steve Bowles and requested to work only 5 days a week and only 8 hours a day.  The request for accommodation was denied by Steve Bowles.

33.    Plaintiff returned to work on or about January 24, 2006 and still missed some work because the new mediation for depression was causing him muscle aches and seizures.

34.    Plaintiff was still required to work overtime and during one week, worked five 10 hour days in a row.

35.    On February 6, 2006, Plaintiff again requested reasonable accommodation and told Steve Bowles that he needed to work regular hours and could not work the overtime hours the company was demanding.

36.    That same day, Wing Aviation supervisors stood by and did nothing while permitting co-workers to mock and taunt Plaintiff over his mental health problems.

37.    Plaintiff cursed at one of the co-workers who was making fun of him and left work to go home.

38.    The next day Plaintiff was terminated by Wing Aviation supervisors for cussing in the workplace, although that type of language was commonly used at the Wing Aviation facility and others who cussed were not terminated.

### COUNT I - VIOLATIONS OF AMERICANS WITH DISABILITIES ACT

39.    Plaintiff hereby incorporates paragraphs 1 through 38 by reference.

40.    At all relevant times, Plaintiff was a qualified individual with a disability under the AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. §12111.

41.    At all relevant times, "Tech" and Wing Aviation were employers under the meaning of the AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. §12111.

42.    The Defendants placed the Plaintiff in an untenable position that resulted in his disability and then terminated him after doing so, in violation of the ADA.

43.    The Defendants discriminated against Plaintiff by failing to provide for Plaintiff's reasonable requests for accommodation which would have permitted Plaintiff to continue to perform the essential functions of his job as an aircraft painter.

44.    Plaintiff requested but was denied a modified work schedule or additional unpaid leave.

45.    Plaintiff required the following reasonable accommodations to perform his job: working only forty hours per week and no more than 40 hours a week for a period of time or additional unpaid time off.

46.    Although Plaintiff requested these accommodations, Defendant refused to accommodate Plaintiff's disability in violation of the ADA.

47.    Defendants acted with malice or reckless indifference to the protected rights of Plaintiff in violation of the ADA.

## COUNT II - VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

48.     Plaintiff hereby incorporates paragraphs 1 through 47 by reference.

49.     At all relevant times, Plaintiff was an eligible employee under the FAMILY AND MEDICAL LEAVE ACT (FMLA), 29 U.S.C. §2611. Plaintiff was employed by Defendants for at least 12 months and for at least 1,250 hours of service during the previous 12-month period.

50.     At all relevant times, "Tech" and Wing Aviation were employers within the meaning of the FMLA.  Defendants are engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year.  *See*, 29 U.S.C. §2611(4).

51.     Plaintiff was entitled to 12 work weeks of leave during the period of October 1, 2005 and October 1, 2006 because of a serious health condition that made Plaintiff unable to perform the functions of his position.

52.     Plaintiff gave Defendant as much notice as was practicable before the date leave should have begun.

53.     Plaintiff could have provided the certification of need if the same had been required by Defendant.

54.     Defendants intentionally denied Plaintiff the exercise of his rights provided under the FMLA by refusing to grant Plaintiff leave and terminating him in retaliation for requesting time off in violation of the FMLA.

55.     Defendants' conduct was an intentional and willful violation of the FMLA

## COUNT III - VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

56.     Plaintiff hereby incorporates paragraphs 1 through 55 by reference.

57.      At all relevant times, Plaintiff was a non-exempt employee under the meaning of the FAIR LABOR STANDARDS ACT (FLSA), 29 U.S.C. 201 §§3(e),  7 & 13 and was entitled to be paid time and one-half for all hours worked over 40 each week.

58.      At all relevant times, "Tech" and Wing Aviation were employers under the meaning of  29 U.S.C. 201§3(d) and were engaged in interstate commerce or the production of goods for interstate commerce.

59.     As employers engaged in commerce or in the production of goods for commerce, "Tech" and Wing Aviation violated the FAIR LABOR STANDARDS ACT of 1938 as amended, 29 U.S.C. 201 *et. seq*.,  when they failed to properly compensate Plaintiff for his employment in excess of the forty hours per week at the rate not less than one and one-half time his regular rate.

60.     Plaintiff alleges that "Tech" and Wing Aviation conspired together to avoid paying him one and one-half time his "regular rate" which was really the base rate plus the hourly per diem.

61.     Plaintiff further alleges that from May 28, 2005 to February 7, 2006, "Tech" and Wing Aviation failed to pay him at the rate of one and one-half his earnings, or the approximate sum of $6,000.00 for which he is owed for the hours he worked in excess of forty per week.

62.     Plaintiff alleges that in an attempt to avoid paying him overtime, "Tech" and Wing Aviation mislabeled part of his base rate as hourly per diem, which had no rational relation to the actual expenses of travel or lodging.  In fact, for much of the time, Plaintiff lived near the Wing Aviation facility.

63.     Additionally, to avoid the technical appearance of a "per diem employee" being employed for an extended time period, United Technisource, Inc. merely reinvented itself as AIS Tech Services, Inc., entered into another, yet almost identical contract with Plaintiff, who maintained the exact same relationship with Wing Aviation for two years.

64.     Plaintiff  further alleges that "Tech" and Wing Aviation acted willfully, that they knew or showed  reckless disregard for the matter of whether its conduct was prohibited by the FLSA, when it failed to compensate Plaintiff properly for his employment in excess of the forty hours per week at the rate not less than one and one-half time his regular rate.  Thus "Tech" and Wing Aviation are additionally liable for their actions from May 28, 2004 through May 28, 2005.  Plaintiff alleges that  from May 28, 2004 through May 28, 2005, "Tech" and Wing Aviation failed to pay him at the rate of one and one-half his earnings or the approximate sum of $7,500, which he is owed for hours worked in excess of forty per week.

### RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

65.     Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

66.    Defendants are vicariously liable for the conduct of their employees.

## DAMAGES

67.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and damages:

a.    Plaintiff was terminated from employment with Defendants.  Although Plaintiff has diligently sought other employment, he has been unable to find and maintain a job at comparable pay.   In addition, Plaintiff has incurred expenses in seeking other employment;

b.    Plaintiff seeks compensation for all past and future lost wages and benefits, plus prejudgment and postjudgment  interest at the prevailing rate;

c.    Plaintiff is entitled to postjudgment interest on all sums, including attorney fees and costs awarded in this action;

d.     Plaintiff suffered physical pain, mental anguish and emotional distress in the past and future;

e.    Medical expenses in the past and future; and,

f.    Damage to earning capacity.

## LIQUIDATED DAMAGES & PUNITIVE DAMAGES

68.    Because Defendants acted with malice or reckless indifference to his protected rights under the ADA, Plaintiff requests an award of punitive damages.

69.    Because Defendants' conduct was an intentional and willful violation, Plaintiff requests an award of liquidated damages of the FMLA.

70.    Pursuant to FLSA, Plaintiff further alleges that Defendants should also be held liable for an additional amount equal to the actual confirmed damages as liquidated damages, or two times his actual damages.

**ATTORNEY FEES AND COSTS**

71.    Plaintiff  is entitled to and requests an award of attorney fees and costs under the ADA, FMLA and FLSA.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, TIMOTHY S. GAGNON, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants, for damages in an amount within the jurisdictional limits of the Court; liquidated damages and  punitive damages, together with interest as allowed by law; attorneys fees and costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,
THE LAW OFFICE OF JO MILLER, P.L.L.C.
The Parsonage at 505 North Main
Carriage House
Conroe, Texas  77301
Tel. (936)539-4400
Fax. (936)539-4409


/s/ Jo Miller
JO MILLER

Attorney for Plaintiff
TIMOTHY S. GAGNON
Texas Bar No. 00791268
Southern District Bar No: 20385

Page 13 of  13